**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

---

**STANLEY BOND, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF BILLY JO LANDER** — **PLAINTIFF**

**vs.** — **CASE 5:25-cv-05169-TLB**

**EQUITY INSURANCE COMPANY,**
**Serve at: 4315 Lakeshore Drive**
**Waco, TX 76710**

**and**

**COURTNEY & MILLS, LLC** — **DEFENDANTS**
**Serve: Ann Littell Mills, Registered Agent**
**540 E. Chestnut Expwy, Ste. 100**
**Springfield, MO 65802**

---

## COMPLAINT

COMES NOW plaintiff Stanley Bond, Chapter 7 Trustee for the Bankruptcy Estate of Billy Jo Lander, by and through counsel, Strong Law, P.C. and Quattlebaum, Grooms & Tull PLLC, and for his cause of action against defendants Equity Insurance Company and Courtney & Mills, LLC, states and alleges as follows:

### PARTIES

1. Plaintiff Stanley Bond is the Chapter 7 Trustee for the United States Bankruptcy Court, Western District of Arkansas, and the designated Representative of the Estate of Billy Jo Lander, and has capacity to sue on the Estate's behalf. 11 U.S.C. § 323.

2. Defendant Equity Insurance Company (hereinafter "Equity Insurance") is a Texas-based insurance company doing business in Arkansas, domiciled in Texas, and with its primary place of business in Waco, Texas. As part of its business, it sells insurance, including but not

limited to policies such as the policy(s) issued which provides coverage to Billy Jo Lander (hereinafter "Billy Jo"). Service of process may be accomplished by serving Equity Insurance Company at its principal address of 4315 Lakeshore Drive, Suite J, Waco, Texas 76710.

3. Defendant Courtney & Mills, LLC (hereinafter "Courtney & Mills") is a Missouri LLC, with its principal place of business in Missouri, that has attorneys licensed to practice law in the State of Missouri. At all times relevant, and upon information and belief, Chad Courtney and Ann Mills are Missouri-licensed attorneys that are agents and/or employees of Courtney & Mills, LLC, and were acting within the course and scope of their agency and/or employment. Service of process may be accomplished by serving Courtney & Mills, LLC's registered agent: Ann Littell Mill, 540 East Chestnut Expressway, Suite 100, Springfield, Missouri 65802.

4. This honorable Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §1332(a) because this is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, and over the parties, and venue is proper in accordance with 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

5. On September 8, 2017, Billy Jo Lander (hereinafter "Billy Jo") caused a wreck in Berryville, Arkansas, when she turned left in front of a motorcycle carrying Mike and Brandy Kuster (hereinafter "the Kusters").

6. At the time of the wreck, Billy Jo was insured through a policy issued by Equity Insurance. That policy provided liability coverage of $25,000 per person or $50,000 per accident.

7. After the wreck, the Kusters made a demand upon Equity Insurance for $10,000,000 or all available insurance coverage that Billy Jo had under her Equity Insurance policy, whichever was less. In exchange, the Kusters would agree to a release of Billy Jo.

8. When that demand was made, Equity Insurance knew the Kusters' damages far exceeded the insurance coverage available to Billy Jo and should Equity Insurance fail to act appropriately to protect its insured, Billy Jo would be exposed to a financially ruinous judgment for civil damages.

9. Despite this knowledge, in response to the Kusters' demand, Equity Insurance sent a general release. A general release would have required the Kusters release additional claims beyond the claims they had against Billy Jo. The general release also demanded that the Kusters release Equity Insurance specifically.

10. In response, the Kusters rejected the terms of the general release. The Kusters then gave Equity Insurance a second opportunity to protect Billy Jo and settle the claims against her for the policy limits of coverage under a specific release. That release would have resolved the Kusters' claims against Billy Jo.

11. Equity Insurance rejected the Kusters' offer to settle, giving Billy Jo a complete and final specific release.

12. Thereafter, the Kusters hired counsel that gave Equity Insurance a third opportunity to resolve the claims against Billy Jo for the policy limits of coverage under a specific release that would completely release Billy Jo while preserving other potential claims.

13. Equity Insurance again rejected that offer to settle within the policy limits of coverage stating that it would not change the terms of its general release.

14. Because Equity Insurance refused to resolve the claims against Billy Jo within the policy limits of coverage despite multiple opportunities, the Kusters filed suit against Billy Jo on August 2, 2019.

15. After the suit was filed, sometime in early 2021, Billy Jo was called directly and solicited by Chad Courtney (hereinafter “Courtney”).

16. Billy Jo did not know Courtney and was not searching for legal representation.

17. Courtney is a Missouri-licensed attorney that is part of Courtney & Mills, LLC, a Springfield, Missouri based law firm that specializes in divorce law.

18. Courtney is not licensed to practice law in the State of Arkansas.

19. Courtney told Billy Jo she had a claim against Equity Insurance because Equity Insurance failed to do its job and protect her and stand up for her.

20. These were claims under Arkansas law and were part of a wreck that occurred in Arkansas that was caused by Billy Jo, an Arkansas resident.

21. Billy Jo, based on Courtney’s representations, agreed to hire Courtney & Mills and thereafter Courtney and Ann Mills traveled to Arkansas and had Billy Jo sign a contract.

22. In October 2021, Courtney had Billy Jo travel to his Springfield, Missouri office. Once there, Courtney showed Billy Jo at least a partial agreement whereby Equity Insurance agreed to pay Billy Jo $500,000 for its negligence and bad faith.

23. In addition to the payment of $500,000, the agreement stated that Equity Insurance would hold Billy Jo harmless and pay any judgment entered against her in the Kusters’ action.

24. This agreement was drafted by Equity Insurance, approved by Courtney & Mills, and signed by Billy Jo and an Equity Insurance executive with final signature occurring on November 22, 2021.

25. In early April 2024, the Kusters sent a final demand to Equity Insurance to resolve the claims against Billy Jo. Equity Insurance again rejected the offer to settle the case against Billy Jo.

26. On April 28, 2024, a jury returned a verdict against Billy Jo in the amount of $8,321,348.00. This verdict was reduced to judgment with post-judgment interest at the rate of 7.5% on May 7, 2024.

27. After the verdict, Equity Insurance, working in concert with Courtney & Mills, wanted to change the terms of the agreement it had with Billy Jo. Namely, Equity Insurance no longer wanted to hold Billy Jo harmless and pay the Kusters' Judgment against her.

28. Equity Insurance drafted an "Addendum to Confidential Settlement Agreement and General Release" (hereinafter "Addendum") that it then forwarded to Courtney & Mills and instructed Courtney to have Billy Jo initial it.

29. Equity Insurance and Courtney & Mills knew this Addendum was only favorable to Equity Insurance, would strip Billy Jo of vital protections from the original agreement, and was an attempt to defraud the Kusters as known creditors.

30. On June 24, 2024, Courtney & Mills sent the Addendum to Billy Jo and instructed her to initial it.

31. In that letter, Courtney told Billy Jo that the Addendum was merely "a clarification of the agreement" of the original settlement agreement with Equity Insurance.

32. Contrary to Courtney & Mills' representations, the Addendum was not at all a simple clarification of the prior agreement but rather materially changed the most important protection Billy Jo received in the prior agreement, namely that Equity Insurance would hold her harmless from the Kusters' Judgment.

33. Equity Insurance paid Billy Jo nothing for her giving up this very significant right and Billy Jo's counsel, Courtney & Mills, did not advise her she was giving up a very significant

material right but rather induced her to sign the Addendum by falsely stating the Addendum was only a clarification of the prior agreement.

34. Under this Addendum, Billy Jo would be (and was) forced to file bankruptcy to insulate Equity Insurance from its admitted bad faith conduct and from the portion of the original settlement agreement whereby Equity Insurance was supposed to be responsible for paying any judgment against Billy Jo in the Kusters' lawsuit. This was only done after a verdict was entered against Billy Jo for $8,321,348.00 and both Equity Insurance and Courtney & Mills were aware of this judgment.

35. After Billy Jo initialed the Addendum—which was undated and unsigned by any party—Courtney & Mills fast-tracked Billy Jo towards bankruptcy and instructed Billy Jo not to disclose the agreement between Equity Insurance and Billy Jo to anyone, including the Bankruptcy Court.

## COUNT I
## RESCISSION OF THE ADDENDUM AND ENFORCEMENT OF THE NOVEMBER 22, 2021 CONTRACT BETWEEN EQUITY INSURANCE AND ITS INSURED, BILLY JO LANDER

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count I of this Complaint states and alleges as follows:

36. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

37. The original agreement between Equity Insurance and Billy Jo wherein Equity Insurance recognized it had acted in bad faith and accepted responsibility for its bad faith, was consummated with a payment of $500,000 to Billy Jo as consideration.

38. That agreement stated that in addition to the $500,000 payment, Equity Insurance would hold Billy Jo harmless and indemnify her for any judgment entered against her in the lawsuit filed by the Kusters.

39. Two and a half years later, Equity Insurance, working in concert with Courtney & Mills, conspired to materially alter the terms of the agreement between Equity Insurance and Billy Jo.

40. The Addendum was also designed to defraud the Kusters, who are known creditors of Billy Jo.

41. Once Equity Insurance knew the amount of the Judgment entered against Billy Jo, only then did Equity Insurance seek to renegotiate the terms, rescind its contractual promises to pay the Kusters' Judgment, rescind its agreement to hold Billy Jo harmless and indemnify her, and rescind that it had given up its defenses to any bad faith claims.

42. The Addendum materially altered the terms of the original agreement between Equity Insurance and Billy Jo, to Billy Jo's singular detriment, and it did so without any consideration.

43. The Addendum was the product of fraud and lack of consideration and therefore as a matter of law and equity the Addendum should be rescinded and Equity Insurance ordered to hold Billy Jo harmless and pay the Kusters' Judgment in accordance with terms of the contract dated November 22, 2021.

WHEREFORE, plaintiff seeks an order from this Court for recission of the Addendum for lack of consideration and fraud, for damages associated with the same, including actual and punitive damages, and for such further relief as the Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count II of this Complaint states and alleges as follows:

44. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

45. Billy Jo entered into a valid and binding contract with Equity Insurance with final signature on November 22, 2021. In this contract Equity Insurance agreed to pay for all damages its bad faith and negligent conduct caused Billy Jo. Specifically, Equity Insurance agreed to pay Billy Jo $500,000 to compensate her for damages she sustained and for any claim of punitive damages. Equity Insurance also promised to pay the ultimate judgment the Kusters may get against her by agreeing to hold Billy Jo harmless and indemnify her/pay the Kusters' Judgment.

46. Equity Insurance and Billy Jo's counsel recognized that the damages resulting from its bad faith and neglect were threefold: 1) personal damages to Billy Jo arising from the Kusters' lawsuit; 2) punitive damages; and 3) the excess judgment that would be entered against Billy Jo due to Equity Insurance's failure to settle the case. In the November 22, 2021 Contract, Equity Insurance agreed to pay all damages.

47. Equity Insurance violated and breached the contract as set forth above, by refusing to honor its contractual agreement to hold Billy Jo harmless and indemnify Billy Jo from the Kusters' Judgment.

48. Due to Equity Insurance's violations, breaches, and failures, Billy Jo suffered damages as a direct result of the breach of the insurance contract, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs;

b. Emotional and financial costs associated with being forced to file bankruptcy; and

c. Emotional damage and anxiety brought on by Equity Insurance's conduct in creating an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT III
## CIVIL CONSPIRACY BETWEEN EQUITY INSURANCE AND COURTNEY & MILLS

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count III of this Complaint states and alleges as follows:

49. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

50. Since Courtney & Mills was first contacted, Equity Insurance and Courtney & Mills have worked in concert to accomplish a purpose that is unlawful or oppressive.

51. Those actions culminated in the signing of an agreement expressly designed to defraud creditors.

52. Equity Insurance and Courtney & Mills then worked tirelessly to deny the existence of that agreement, refused to comply with a lawful Court Order to produce it in its entirety, which required a second Court Order, and then instructed Billy Jo not to disclose the agreement in bankruptcy filings or to the Bankruptcy Court and in violation of Ark. Code Ann. § 4-59-204.

53. After Judgment was entered, as evidenced by the "Addendum," it was Equity Insurance and Courtney & Mills' plan to limit payment to the previously paid $500,000 which was a fraction of the Judgment (1/16) and thereafter attempt to run Billy Jo through bankruptcy to avoid paying the Kusters who were now judgment creditors.

54. These acts were unlawful, oppressive, and/or immoral.

55. As a direct result of these actions, both Billy Jo and the defrauded creditors were harmed, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs that, under the Addendum Courtney & Mills advised Billy Jo to sign, purporting to make Billy Jo solely responsible rather than Equity Insurance;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Courtney & Mills' conduct in advising Billy Jo to sign an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees to pay attorneys who were actively working with Equity Insurance and against Billy Jo.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys' fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT IV
## BAD FAITH AGAINST EQUITY INSURANCE

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count IV of this Complaint states and alleges as follows:

56. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

57. Equity Insurance's conduct resulted in a judgment of $8,321,348 plus post-judgment interest against its insured, Billy Jo.

58. Equity Insurance knew that it had failed to settle the Kusters' claims against Billy Jo within the policy limits when given a fair and reasonable opportunity and knew the consequences of those actions.

59. In 2021, Equity Insurance recognized that it had acted in bad faith and paid Billy Jo $500,000 and agreed to hold her harmless and indemnify her from any judgment entered against Billy Jo in the lawsuit involving the Kusters.

60. Then, after the jury verdict was entered against Billy Jo for $8,321,348 plus post-judgment interest at the rate of 7.5%, Equity Insurance committed further bad faith by attempting to back out of its agreement to pay the Judgment and once again place the burden of the Judgment back on its insured, Billy Jo Lander.

61. Equity Insurance and Courtney & Mills then conspired to undo the agreement through the Addendum that lacked any consideration and solely benefited Equity Insurance.

62. Equity Insurance knew that this strategy would shift all the financial burden from Equity Insurance to its insured, Billy Jo.

63. After the Addendum was initialed, Billy Jo was told she would have to file for bankruptcy and that Equity Insurance would pay for it.

64. Billy Jo was also told not to disclose her agreement to anyone, including the Bankruptcy Court.

65. Equity Insurance's conduct as set out above is conduct intentionally and/or recklessly designed to cause financial damage to Billy Jo, with knowledge of the disastrous consequences to her. Such conduct was done with the intention of avoiding paying the obligations set out in its policy(s), and which were purchased for this protection. Its conduct was also to avoid the responsibilities for its admitted bad faith conduct.

66. As a direct and proximate result of Equity Insurance's bad faith conduct as set forth above and breach of fiduciary duties as set forth above, Billy Jo sustained damage, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Equity Insurance's conduct in creating an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees Billy Jo incurred for legal services protecting her from the Kusters' Judgment.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys' fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT V
## NEGLIGENT FAILURE TO SETTLE AGAINST EQUITY INSURANCE

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count V of this Complaint states and alleges as follows:

67. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

68. Pursuant to the insurance contract entered into between Billy Jo and Equity Insurance, Equity Insurance required Billy Jo to surrender all rights of negotiation and settlement.

69. Pursuant to the contract of insurance, Equity Insurance assumed certain duties toward Billy Jo in the handling of any claims brought against her.

70. After September 8, 2017, Equity Insurance was informed that Billy Jo had caused a wreck that resulted in catastrophic injuries to the Kusters.

71. When presented with terms to resolve the Kusters' claims within the policy limits of coverage, Equity Insurance repeatedly refused, stating that it would not agree to the Kusters' fair and reasonable terms of releasing its insured through a limited release and instead demanded upon a general release not specific to the claims at issue.

72. Equity Insurance, acting through its agents and employees, was negligent and breached the duties it owed to Billy in the following ways either individually, in combination, or in the alternative:

a. In demanding a general release from the Kusters;

b. In failing to accept the Kusters' terms for settlement which would have protected Billy Jo;

c. In failing to resolve the Kusters' claims within the policy limits when given multiple opportunities to do so;

d. In failing to properly train adjusters such that those adjusters would demand settlement terms that harm the insured;

e. In failing to have an appropriate release;

f. In failing to agree to an appropriate release;

g. In failing to take action in the best interest of Billy Jo;

h. In taking action contrary to the best interest of Billy Jo;

i. In failing to meet the fair and reasonable demands of the Kusters and/or their attorneys when such is the requirement of claims adjusters seeking to protect its insured;

j. In failing to properly investigate the claims against Billy Jo to determine the full extent and risk for both liability and financial exposure, as well as coverage;

k. In failing to cooperate with the Kusters and their attorneys to seek resolution of the claim and protect Billy Jo; and

l. In failing to pay the full Judgment entered against Billy Jo, plus interest.

73. Equity Insurance's negligent failure to settle the claims made against Billy Jo by the Kusters, as set forth above, resulted in damage to Billy Jo, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Equity Insurance's conduct in creating an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees Billy Jo incurred for legal services in protecting her from the Kusters' Judgment.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys' fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT VI
## BREACH OF FIDUCIARY DUTIES

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count VI of this Complaint states and alleges as follows:

74. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

75. Pursuant to the contract of insurance entered into between Equity Insurance and Billy Jo, Equity Insurance required Billy Jo to surrender all rights of negotiation and settlement.

76. Pursuant to the contract of insurance, Equity Insurance assumed and owed certain fiduciary duties to Billy Jo in the handling of any claims brought against her.

77. Equity Insurance, acting through its agents and employees, breached these fiduciary duties to Billy Jo as set forth in the paragraphs above, and further in the following respects:

a. In failing to take action in the best interest of Billy Jo;

b. In taking action contrary to the best interest of Billy Jo;

c. In failing to properly investigate the claim(s) against Billy Jo and determine Billy Jo's liability, excess exposure, and coverage;

d. In failing to meet the fair and reasonable demands of the Kusters and/or their attorney when such is the requirement of claims adjusters and professionals seeking to protect its insured;

e. In failing to settle the Kusters' claim for the policy(s) limits of liability coverage when given the opportunity, and in failing to thereafter settle the claims against Billy Jo for sums far less than the reasonable value of the claim;

f. In failing to cooperate with the Kusters to seek resolution of the claim and protect Billy Jo;

g. In failing to pay the full Judgment entered against Billy Jo, plus interest;

h. In taking action in the interest of Equity Insurance, and not Billy Jo, despite its obligation to place Billy Jo's interest paramount, as required under the law and/or industry standards;

i. In failing to advise Billy Jo of necessary information;

j. In Equity Insurance's choice to look for ways to avoid its obligations, or otherwise save money by drafting and inducing Billy Jo to sign a fraudulent agreement designed to offload Equity Insurance's obligations onto Billy Jo;

k. In misrepresenting provisions of the policy, provisions of the communications, and the facts and circumstances of coverage, in an attempt to mislead Billy Jo;

l. In taking other actions contrary to its fiduciary relationship with Billy Jo, in violation of its duties and obligations under the law and/or its internal standards and/or industry standards and/or state regulations and statutes;

m. In taking action in the interest of Equity Insurance and not Billy Jo, despite knowledge, promises, standards, policies, procedures, substantive law, regulations, and/or representations that Billy Jo's interest would be placed paramount;

n. In instructing and/or following instructions to take action contrary to the interest of Billy Jo, solely in the interest of Equity Insurance;

o. In creating a culture and/or atmosphere where adjusters or other claims representatives were instructed, trained, incentivized, or otherwise prompted to look for ways to avoid its obligations, to avoid paying money due and owing, and/or to avoid even paying for defense, rather than looking for ways to find coverage and provide the promised benefits to insureds;

p. In failing to properly monitor and control its employees and agents;

q. In failing to properly train, educate and/or ensure that such knowledge, if trained, was remembered, understood and complied with, such that employees and/or agents of Equity Insurance would know what a fiduciary duty was, would know how to meet such a fiduciary duty, and would know the consequences of failing to abide by such duties, but instead focus on the interest of Equity Insurance in detriment to the interest of the insured;

r. In violating recognized industry claims handling practices and standards required of a fiduciary in the same or similar circumstances; and

s. In violating company claims handling practices, guidelines, standards, rules, policies, procedures, protocols, and/or best practices intended to fulfill the fiduciary duty owed to the insured.

78. Equity Insurance's negligent failure to settle the claims made against Billy Jo by the Kusters, as set forth above, resulted in damage to Billy Jo, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Equity Insurance's conduct in creating an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees Billy Jo incurred for legal services in protecting her from the Kusters' Judgment.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys'

fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT VII
## LEGAL MALPRACTICE AGAINST COURTNEY & MILLS

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count VII of this Complaint states and alleges as follows:

79. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

80. At all times relevant, an attorney-client relationship existed between Courtney & Mills and Billy Jo, giving rise to Courtney & Mills' duty to use that degree of skill, learning, and care that a reasonably competent lawyer would use in similar circumstances.

81. Courtney & Mills, through its agents and/or employees, breached its duty to use that degree of skill, learning, and care, and was negligent in each of the following ways:

a. In failing to take action in the best interest of Billy Jo;

b. In taking action contrary to the best interest of Billy Jo;

c. In colluding with Equity Insurance and Equity Insurance's counsel for the benefit of Equity Insurance and to the detriment of Billy Jo;

d. In working with Equity Insurance for its benefit to the detriment of its client, Billy Jo;

e. In having Billy Jo sign an addendum that stripped her of protections she had bargained for and relied upon;

f. In taking a fee from a settlement that ultimately harmed Billy Jo;

g. In telling Billy Jo she must file for bankruptcy in an effort to protect Equity Insurance;

h. In taking action in the interest of Equity Insurance, and not Billy Jo, despite its obligation to place Billy Jo's interest paramount, as required under the law and/or the legal ethical standards;

i. In failing to advise Billy Jo of necessary information;

j. In assisting Equity Insurance in its efforts to avoid its obligations, or otherwise save money by drafting and inducing Billy Jo to sign a fraudulent agreement designed to offload Equity Insurance's obligations onto Billy Jo and defraud creditors, namely the Kusters;

k. In misrepresenting provisions of the agreement, and the facts and circumstances of Equity Insurance's liability, in an attempt to mislead Billy Jo;

l. In taking other actions contrary to its fiduciary relationship with Billy Jo, in violation of its duties and obligations under the law and/or its internal standards and/or industry standards and/or state regulations and statutes;

m. In taking action in the interest of Equity Insurance and not Billy Jo, despite knowledge, promises, standards, policies, procedures, substantive law, regulations, and/or representations that Billy Jo's interest would be placed paramount;

n. In instructing and/or following instructions to take action contrary to the interest of Billy Jo, solely in the interest of Equity Insurance;

o. In inducing Billy Jo to sign an agreement in violation of A.C.A. § 4-59-204;

p. In failing to protect Billy Jo Lander by advising her to assign her bad faith claim to the Kusters; and

q. In all other ways found through discovery.

82. Courtney & Mills' malpractice resulted in damage to Billy Jo, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs that, under the agreement Courtney & Mills advised Billy Jo to sign, purported to make Billy Jo solely responsible rather than Equity Insurance;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Courtney & Mills' conduct in advising Billy Jo to sign an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees charged for work that was not in its client's best interest.

WHEREFORE, Billy Jo prays for judgment against Courtney and Mills in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys' fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT VIII
## BREACH OF FIDUCIARY DUTIES AGAINST COURTNEY & MILLS

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count VIII of this Complaint states and alleges as follows:

83. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

84. Pursuant to the attorney-client relationship between Courtney & Mills and Billy Jo, Courtney & Mills owed certain fiduciary duties to Billy Jo in the handling of any claims brought against her.

85. Courtney & Mills, acting through its agents and employees, breached these fiduciary duties to Billy Jo as set forth in the paragraphs above, and further in the following respects:

a. In failing to take action in the best interest of Billy Jo;

b. In taking action contrary to the best interest of Billy Jo;

c. In colluding with Equity Insurance and Equity Insurance's counsel for the benefit of Equity Insurance and to the detriment of Billy Jo;

d. In working with Equity Insurance for its benefit to the detriment of its client, Billy Jo;

e. In having Billy Jo sign an addendum that stripped her of protections she had bargained for and relied on;

f. In taking a fee from a settlement that ultimately harmed Billy Jo;

g. In telling Billy Jo she must file for bankruptcy in an effort to protect Equity Insurance;

h. In taking action in the interest of Equity Insurance, and not Billy Jo, despite its obligation to place Billy Jo's interest paramount, as required under the law and/or the legal ethical standards;

i. In failing to advise Billy Jo of necessary information;

j. In assisting Equity Insurance in its efforts to avoid its obligations, or otherwise save money by drafting and inducing Billy Jo to sign a fraudulent agreement designed to offload Equity Insurance's obligations onto Billy Jo and defraud creditors, namely the Kusters;

k. In misrepresenting provisions of the agreement, and the facts and circumstances of Equity Insurance's liability, in an attempt to mislead Billy Jo;

l. In taking other actions contrary to its fiduciary relationship with Billy Jo, in violation of its duties and obligations under the law and/or its internal standards and/or industry standards and/or state regulations and statutes;

m. In taking action in the interest of Equity Insurance and not Billy Jo, despite knowledge, promises, standards, policies, procedures, substantive law, regulations, and/or representations that Billy Jo's interest would be placed paramount;

n. In instructing and/or following instructions to take action contrary to the interest of Billy Jo, solely in the interest of Equity Insurance;

o. In inducing Billy Jo to sign an agreement in violation of A.C.A. § 4-59-204;

p. In failing to protect Billy Jo by advising her to assign her bad faith claim to the Kusters; and

q. In all other ways found through discovery.

86. Courtney & Mills' breach of its fiduciary duties to Billy Jo, as set forth above, resulted in damage to Billy Jo, including but not limited to:

a. A $8,321,348.00 Judgment, plus post-judgment interest and costs that, under the agreement Courtney & Mills advised Billy Jo to sign, purported to make Billy Jo solely responsible rather than Equity Insurance;

b. Emotional and financial costs associated with being forced to file bankruptcy;

c. Emotional damage and anxiety brought on by Courtney & Mills' conduct in advising Billy Jo to sign an agreement that was designed to solely protect Equity Insurance, defraud creditors, and abandon Billy Jo to financial ruin; and

d. Attorney's fees charged for work that was not in its client's best interest.

WHEREFORE, Billy Jo prays for judgment against Equity Insurance in such sum as would fairly and reasonably compensate her for all damages set forth above, for her costs expended herein, for prejudgment interest and post-judgment interest on all sums awarded, for attorneys' fees, for punitive damages, and for such other relief as the Court deems appropriate under the circumstances.

## COUNT IX
## PUNITIVE DAMAGES AGAINST EQUITY INSURANCE AND COURTNEY & MILLS

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count IX of this Complaint states and alleges as follows:

87. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

88. Equity Insurance and Courtney & Mills knew, in light of the surrounding circumstances, that their conduct would naturally and probably result in damage to Billy Jo, as set forth in the incorporated paragraphs above.

89. Despite such knowledge, Equity Insurance and Courtney & Mills, individually and/or in concert, continued to intentionally and/or recklessly and/or fraudulently engage in conduct in reckless disregard of the law, specifically A.C.A § 4-59-204 and in reckless disregard of the consequences to Billy Jo, all with sole regard for Equity Insurance's own pecuniary interest, and/or the pecuniary interest of its agents or adjusters or employees, with knowledge that its conduct would result in the financial ruination of Billy Jo.

90. The conduct of Equity Insurance and Courtney & Mills as set forth above, and throughout the Petition, is conduct from which malice may be inferred; it is conduct that is wrongful and without just cause and excuse; it is conduct that is intentional and/or reckless in its disregard of the rights of Billy Jo, the significant harm it knew would occur, and their solitary focus on Equity Insurance's interest; this conduct that was engaged in with knowledge of its wrongful nature and of the tremendous financial damage that would be inflicted upon its insured and/or client Billy Jo; and it is conduct warranting the award of punitive damages.

WHEREFORE, Billy Jo prays this Court to enter judgment in her favor and against Equity Insurance and Courtney & Mills for punitive damages, in an amount that will punish Equity Insurance and Courtney & Mills for their wrongful conduct and in an amount that will deter other insurance carriers from like conduct, together with prejudgment interest and post judgment interests, her costs, and all other relief the Court deems just and proper.

## COUNT X
## FRAUDULENT TRANSFER UNDER 11 U.S.C. §548 AGAINST EQUITY INSURANCE
## ACTUAL FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count X of this Complaint states and alleges as follows:

91. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

92. After the wreck of September 8, 2017 between the Kusters and Billy Jo, it was known that the Kusters' damages far exceeded the available insurance coverage available to Billy Jo.

93. In 2021, Equity Insurance recognized it had committed bad faith and negligently handled the claim against Billy Jo, paid Billy Jo $500,000 and agreed to pay any judgment entered against her in the lawsuit filed by the Kusters.

94. Billy Jo's only valuable asset in light of these facts was the claims she held against her insurance company, Equity Insurance, namely, claims for insurance bad faith and negligent claims handling.

95. On May 7, 2024, the final Judgment of $8,321,348.00 plus post-judgment interest at the rate of 7.5% was entered against Billy Jo.

96. Thereafter, Equity Insurance conspired with Courtney & Mills to have an addendum initialed with no further consideration which materially altered the terms of the November 2021 Contract and no longer required Equity Insurance pay the Judgment for its bad faith and negligent claims handling. This Addendum meant that Billy Jo purportedly transferred her interest in her claims against Equity Insurance in exchange for roughly 1/16 of the value of the Judgment against her.

97. That purported transfer left Billy Jo with no assets.

98. In addition, the Addendum *required* that Billy Jo would thereafter file bankruptcy.

99. Then, Billy Jo was expressly told not to disclose anything to do with the agreement in bankruptcy filings.

100. The transfer of Billy Jo's bad faith claim to Equity Insurance was fraudulent for a multitude of reasons, including the following:

a. The transfer was made with actual intent to hinder, delay or defraud the Kusters with full knowledge that a judgment in the millions of dollars would be entered in favor of the Kusters against Billy Jo, thereby making Billy Jo a debtor to the Kusters;

b. Billy Jo received far less than a reasonable equivalent of value in exchange for the transfer, to the tune of less than 1/16 of the value of her claim against Equity Insurance;

c. The moment Billy Jo made the transfer of her bad faith claim she was completely insolvent and had no other asset of any value;

d. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy the Kusters' Judgment but was a fraudulent attempt to insulate Equity Insurance for its conduct in failing to settle the Kusters' claims within limits—when given a fair and reasonable opportunity to do so;

e. For purposes of this transfer, Equity Insurance was tantamount to an insider in that it was a fiduciary of Billy Jo and had an insurer/insured relationship with her at the time of the transfer;

f. The transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

g. The agreement between Billy Jo and Equity Insurance was drafted by Equity Insurance to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing in violation of federal law;

h. The transfer of Billy Jo's bad faith claim against Equity Insurance was done after suit was filed against Billy Jo, had been for two years, and for which a trial and verdict for millions of dollars was a high likelihood;

i. The agreement that was drafted by Equity Insurance for the transfer claims to be a bona fide instrument for such transfer. The agreement, in fact, is fraught with inaccuracies, self-serving language, and fraud;

j. The events that led to the transfer are self-evident in that they all point to Equity Insurance trying to protect itself from a known claim by known creditors; and

k. In all other ways learned through discovery.

101. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance.

102. That transfer was committed through actual fraud and is subject to avoidance through 11 U.S.C. § 548.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of Billy Jo's bad faith claim was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

**COUNT XI**
**FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548 AGAINST EQUITY INSURANCE**
**CONSTRUCTIVE FRAUD**

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XI of this Complaint states and alleges as follows:

103. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

104. After the wreck of September 8, 2017, between the Kusters and Billy Jo, it was known that the Kusters' damages far exceeded the available insurance coverage available to Billy Jo.

105. In 2021, Equity Insurance recognized it had committed bad faith and negligent claims handling, paid Billy Jo $500,000 and agreed to pay any judgment entered against her in the lawsuit filed by the Kusters.

106. Billy Jo's only valuable asset in light of these facts was the claims she held against her insurance company, Equity Insurance, namely claims for insurance bad faith and negligent claims handling.

107. On May 7, 2024, the final judgment of $8,321,348.00 plus post-judgment interest at the rate of 7.5% was entered against Billy Jo.

108. Thereafter, Equity Insurance conspired with Courtney & Mills to have an addendum initialed with no further consideration, which materially altered the terms of the November 2021 Contract and no longer required Equity Insurance to pay the Judgment for its bad faith and negligent claims handling. This Addendum meant that Billy Jo purportedly transferred her interest in her claims against Equity Insurance in exchange for roughly 1/16 of the value of the Judgment against her.

109. That purported transfer left Billy Jo with no assets.

110. In addition, the Addendum *required* that Billy Jo would thereafter file bankruptcy.

111. Then Billy Jo was expressly told not to disclose anything to do with the agreement in bankruptcy filings.

112. The transfer of Billy Jo's bad faith claim to Equity Insurance was a fraudulent transfer for a multitude of reasons, including the following:

a. Billy Jo received far less than a reasonable equivalent of value in exchange for the transfer, to the tune of less than 1/16 of the value of her claim against Equity Insurance;

b. In violation of A.C.A. § 4-59-201 et seq.

c. The moment Billy Jo made the transfer of her bad faith claim she was completely insolvent and had no other asset of any value;

d. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy the Kusters' judgment but was a fraudulent attempt to insulate Equity Insurance for its conduct in failing to settle the Kusters' claims within limits—when given a fair and reasonable opportunity to do so;

e. For purposes of this transfer, Equity Insurance was tantamount to an insider in that it was a fiduciary of Billy Jo and had an insurer/insured relationship with her at the time of the transfer;

f. The transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

g. The agreement between Billy Jo and Equity Insurance was drafted by Equity Insurance to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing in violation of federal law;

h. The transfer of Billy Jo's bad faith claim against Equity Insurance was done after suit was filed against Billy Jo, had been for two years, and for which a trial and verdict for millions of dollars was a high likelihood;

i. The agreement that was drafted by Equity Insurance for the transfer claims to be a bona fide instrument for such transfer. The agreement, in fact, is fraught with inaccuracies, self-serving language, and fraud;

j. The events that led to the transfer are self-evident in that they all point to Equity Insurance trying to protect itself from a known claim by known creditors; and

k. In all other ways, learned through discovery.

113. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance.

114. That transfer was committed through actual fraud and is subject to avoidance through 11 U.S.C. § 548.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of Billy Jo's bad faith claim was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XII
## FRAUDULENT TRANSFER UNDER A.C.A. § 4-59-204 AGAINST EQUITY INSURANCE
## ACTUAL FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XII of this Complaint states and alleges as follows:

115. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

116. After the wreck of September 8, 2017 between the Kusters and Billy Jo, it was known that the Kusters' damages far exceeded the available insurance coverage available to Billy Jo.

117. In 2021, Equity Insurance recognized it had committed bad faith and negligent claims handling, paid Billy Jo $500,000 and agreed to pay any judgment entered against her in the lawsuit filed by the Kusters.

118. Billy Jo's only valuable asset in light of these facts was the claims she held against her insurance company, Equity Insurance, namely claims for insurance bad faith and negligent claims handling.

119. On May 7, 2024, the final Judgment of $8,321,348.00 plus post-judgment interest at the rate of 7.5% was entered against Billy Jo.

120. Thereafter, Equity Insurance conspired with Courtney & Mills to have an addendum initialed with no further consideration which materially altered the terms of the November 2021 Contract and no longer required Equity Insurance pay the Judgment for its bad faith and negligent claims handling. This Addendum meant that Billy Jo purportedly transferred her interest in her claims against Equity Insurance in exchange for roughly 1/16 of the value of the judgment against her.

121. That purported transfer left Billy Jo with no assets.

122. In addition, the Addendum *required* that Billy Jo would thereafter file bankruptcy.

123. Then, Billy Jo was expressly told not to disclose anything to do with the agreement in bankruptcy filings.

124. The transfer of Billy Jo's bad faith claim to Equity Insurance was a fraudulent transfer for a multitude of reasons, including the following:

a. The transfer was made with actual intent to hinder, delay or defraud the Kusters with full knowledge that a judgment in the millions of dollars would be entered in favor of the Kusters against Billy Jo, thereby making Billy Jo a debtor to the Kusters;

b. Made in violation of A.C.A. § 4-59-201 et seq.;

c. Billy Jo received far less than a reasonable equivalent of value in exchange for the transfer, to the tune of less than 1/16 of the value of her claim against Equity Insurance;

d. The moment Billy Jo made the transfer of her bad faith claim she was completely insolvent and had no other asset of any value;

e. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy the Kusters' judgment but was a fraudulent attempt to insulate Equity Insurance for its conduct in failing to settle the Kusters' claims within limits—when given a fair and reasonable opportunity to do so;

f. For purposes of this transfer, Equity Insurance was tantamount to an insider in that it was a fiduciary of Billy Jo and had an insurer/insured relationship with her at the time of the transfer;

g. The transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

h. The agreement between Billy Jo and Equity Insurance was drafted by Equity Insurance to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing in violation of federal law;

i. The transfer of Billy Jo's bad faith claim against Equity Insurance was done after suit was filed against Billy Jo, had been for two years, and for which a trial and verdict for millions of dollars was a high likelihood;

j. The agreement that was drafted by Equity Insurance for the transfer claims to be a bona fide instrument for such transfer. The agreement, in fact, is fraught with inaccuracies, self-serving language, and fraud;

k. The events that led to the transfer are self-evident in that they all point to Equity Insurance trying to protect itself from a known claim by known creditors; and

l. In all other ways learned through discovery.

125. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance.

126. That transfer was committed through actual fraud and is subject to avoidance through A.C.A. § 4-59-204.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of Billy Jo's bad faith claim was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XIII
## FRAUDULENT TRANSFER UNDER A.C.A. § 4-59-204 AGAINST EQUITY INSURANCE CONSTRUCTIVE FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XIII of this Complaint states and alleges as follows:

127. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

128. After the wreck of September 8, 2017 between the Kusters and Billy Jo, it was known that the Kusters' damages far exceeded the available insurance coverage available to Billy Jo.

129. In 2021, Equity Insurance recognized it had committed bad faith and negligent claims handling, paid Billy Jo $500,000 and agreed to pay any judgment entered against her in the lawsuit filed by the Kusters.

130. Billy Jo's only valuable asset in light of these facts was the claims she held against her insurance company, Equity Insurance, namely claims for insurance bad faith and negligent claims handling.

131. On May 7, 2024, the final Judgment of $8,321,348.00 plus interest at the rate of 7.5% was entered against Billy Jo.

132. Thereafter, Equity Insurance conspired with Courtney & Mills to have an addendum initialed with no further consideration which materially altered the terms of the November 2021 Contract and no longer required Equity Insurance pay the judgment for its admitted bad faith and negligent claims handling. This Addendum meant that Billy Jo purportedly transferred her interest in her claims against Equity Insurance in exchange for roughly 1/16 of the value of the Judgment against her.

133. That purported transfer left Billy Jo with no assets.

134. In addition, the Addendum *required* that Billy Jo would thereafter file bankruptcy.

135. Then, Billy Jo was expressly told not to disclose anything to do with the agreement in bankruptcy filings.

136. The transfer of Billy Jo's bad faith claim to Equity Insurance was a fraudulent transfer for a multitude of reasons, including the following:

a. Billy Jo received far less than a reasonable equivalent of value in exchange for the transfer, to the tune of less than 1/16 of the value of her claim against Equity Insurance;

b. In violation of A.C.A. § 4-59-204;

c. The moment Billy Jo made the transfer of her bad faith claim she was completely insolvent and had no other asset of any value;

d. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy the Kusters' judgment but was a fraudulent attempt to insulate Equity Insurance for its conduct in failing to settle the Kusters' claims within limits—when given a fair and reasonable opportunity to do so;

e. For purposes of this transfer, Equity Insurance was tantamount to an insider in that it was a fiduciary of Billy Jo and had an insurer/insured relationship with her at the time of the transfer;

f. The transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

g. The agreement between Billy Jo and Equity Insurance was drafted by Equity Insurance to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing, in violation of federal law;

h. The transfer of Billy Jo's bad faith claim against Equity Insurance was done after suit was filed against Billy Jo, had been for two years, and for which a trial and verdict for millions of dollars was a high likelihood;

i. The agreement that was drafted by Equity Insurance for the transfer claims to be a bona fide instrument for such transfer. The agreement, in fact, is fraught with inaccuracies, self-serving language, and fraud;

j. The events that led to the transfer are self-evident in that they all point to Equity Insurance trying to protect itself from a known claim by known creditors; and

k. In all other ways learned through discovery.

137. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance.

138. That transfer was committed through actual fraud and is subject to avoidance through A.C.A. § 4-59-204.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of Billy Jo's bad faith claim was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XIV
## FRAUDULENT TRANSFER UNDER 11 U.S.C. §548 AGAINST COURTNEY & MILLS, LLC
## ACTUAL FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XIV of this Complaint states and alleges as follows:

139. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

140. In 2021, Courtney of Courtney & Mills induced Billy Jo to hire them and told her he wanted to represent her in a claim against Equity Insurance for its improper conduct.

141. Courtney and Ann Mills then traveled to Berryville, Arkansas and met with Billy Jo at her home.

142. During the meeting, Courtney and Ann Mills induced Billy Jo to sign a contract with their firm, Courtney & Mills, LLC, to represent her for her claims against Equity Insurance.

143. At the time of the meeting, Courtney knew that the Kusters had a pending lawsuit against Billy Jo and because of Equity Insurance's improper actions, Billy Jo was exposed to an excess judgment.

144. Courtney also knew that the Kusters' claims against Billy Jo would likely result in a jury verdict totaling millions of dollars.

145. Courtney then encouraged Billy Jo to sign an agreement that Equity Insurance would pay Billy Jo $500,000.

146. Courtney & Mills then took a one-third fee on the amount Equity Insurance paid to Billy Jo and advised Billy Jo to attempt to hide her proceeds in accounts with other individuals' names on them.

147. In June 2024 after a jury had entered a verdict that was reduced to judgment in the amount of $8,321,348 plus post-judgment interest at the rate of 7.5%, Courtney advised Billy Jo to sign an addendum that would strip her of the protection of payment of the Kusters' Judgment and force her into bankruptcy because of a lack of assets.

148. Courtney & Mills' acceptance of money in exchange for facilitating the agreement between Equity Insurance and Billy Jo was a fraudulent transfer for a multitude of reasons, including the following:

a. The transfer was made with actual intent to hinder, delay or defraud creditor(s) with full knowledge that a judgment in the millions of dollars would be entered in favor of the Kusters against Billy Jo, thereby making Billy Jo a debtor to the Kusters in violation of A.C.A. § 4-59-201 et seq;

b. Courtney & Mills took $166,666.67 knowing it would be subject to subsequent claims in bankruptcy court but also that it was a portion of an amount that was far less than the fair value of Billy Jo's claim against Equity Insurance;

c. The transfer of the $166,66.67, in conjunction with the transfer of Billy Jo's claims against Equity Insurance constituted insolvency for Billy Jo as it reduced her assets of value to nothing;

d. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy her creditor(s) claims including the judgment the Kusters were likely to receive against her;

e. For purposes of this transfer, Courtney & Mills was an insider in that it was a fiduciary of Billy Jo and had an attorney-client relationship with her at the time of the transfer;

f. The transfer of $166,666.67 in conjunction with the transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

g. The agreement that was the basis of the transfer of $166,666.67 to Courtney & Mills was drafted to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing;

h. The transfer of $166,666.67 to Courtney & Mills was done after suit was filed against Billy Jo, and for which a trial and verdict for millions of dollars was a high likelihood;

i. The transfer of $166,666.67 to Courtney & Mills was under the auspices that it was part of a bona fide instrument for such transfer; and

j. In all other ways learned through discovery.

149. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against to Equity Insurance and the agreement which gave Courtney & Mills $166,666.67.

150. That transfer was committed through actual fraud and is subject to avoidance through 11 U.S.C. § 548.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of $166,666.67 to Courtney & Mills was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XV
## FRAUDULENT TRANSFER UNDER 11 U.S.C. §548 AGAINST COURTNEY & MILLS
## CONSTRUCTIVE FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XV of this Complaint states and alleges as follows:

151. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

152. In 2021, Courtney of Courtney & Mills induced Billy Jo to hire them and told her he wanted to represent her in a claim against Equity Insurance for its improper conduct.

153. Courtney and Ann Mills then traveled to Berryville, Arkansas and met with Billy Jo at her home.

154. During the meeting, Courtney and Ann Mills induced Billy Jo to sign a contract with their firm, Courtney & Mills, LLC, to represent her for her claims against Equity Insurance.

155. At the time of the meeting, Courtney knew that the Kusters had a pending lawsuit against Billy Jo and because of Equity Insurance's improper actions, Billy Jo was exposed to an excess judgment.

156. Courtney also knew that the Kusters' claims against Billy Jo would likely result in a jury verdict totaling millions of dollars.

157. Courtney then encouraged Billy Jo to sign an agreement that Equity Insurance would pay Billy Jo $500,000.

158. Courtney & Mills then took a one-third fee on the amount Equity Insurance paid to Billy Jo and advised Billy Jo to attempt to hide her proceeds in accounts with other individuals' names on them.

159. In June 2024 after a jury had entered a verdict that was reduced to judgment in the amount of $8,321,348 plus post-judgment interest at the rate of 7.5%, Courtney advised Billy Jo to sign an addendum that would strip her of the protection of payment of the Kusters' Judgment and force her into bankruptcy because of a lack of assets.

160. Courtney & Mills' acceptance of money in exchange for facilitating the agreement between Equity Insurance and Billy Jo was a fraudulent transfer for a multitude of reasons, including the following:

a. Courtney & Mills took $166,666.67 knowing it would be subject to subsequent claims in bankruptcy court but also that it was a portion of an amount that was far less than the fair value of Billy Jo's claim against Equity Insurance;

b. The transfer of the $166,666.67, in conjunction with the transfer of Billy Jo's claims against Equity Insurance constituted insolvency for Billy Jo as it reduced her assets of value to nothing;

c. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy her creditor(s) claims including the judgment the Kusters were likely to receive against her;

d. For purposes of this transfer, Courtney & Mills was an insider in that it was a fiduciary of Billy Jo and had an attorney-client relationship with her at the time of the transfer;

e. The transfer of $166,666.67 in conjunction with the transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of

Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

f. The agreement that was the basis of the transfer of $166,666.67 to Courtney & Mills was drafted to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing;

g. The transfer of $166,666.67 to Courtney & Mills was done after suit was filed against Billy Jo, and for which a trial and verdict for millions of dollars was a high likelihood;

h. The transfer of $166,666.67 to Courtney & Mills was under the auspices that it was part of a bona fide instrument for such transfer; and

i. In all other ways learned through discovery.

161. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance and the agreement which gave Courtney & Mills $166,666.67.

162. That transfer was committed through actual fraud and is subject to avoidance through 11 U.S.C. § 548.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of $166,666.67 to Courtney & Mills was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XVI
## FRAUDULENT TRANSFER UNDER A.C.A. § 4-59-204 AGAINST COURTNEY & MILLS
## ACTUAL FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XVI of this Complaint states and alleges as follows:

163. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

164. In 2021, Courtney of Courtney & Mills induce Billy Jo to hire them and told her he wanted to represent her in a claim against Equity Insurance for its improper conduct.

165. Courtney and Ann Mills then traveled to Berryville, Arkansas and met with Billy Jo at her home.

166. During the meeting, Courtney and Ann Mills induced Billy Jo to sign a contract with his firm, Courtney & Mills, LLC, to represent her for her claims against Equity Insurance.

167. At the time of the meeting, Courtney knew that the Kusters had a pending lawsuit against Billy Jo and because of Equity Insurance's improper actions, Billy Jo was exposed to an excess judgment.

168. Courtney also knew that the Kusters' claims against Billy Jo would likely result in a jury verdict totaling millions of dollars.

169. Courtney then encouraged Billy Jo to sign an agreement that Equity Insurance would pay Billy Jo $500,000.

170. Courtney & Mills then took a one-third fee on the amount Equity Insurance paid to Billy Jo and advised Billy Jo to attempt to hide her proceeds in accounts with other individuals' names on them.

171. In June 2024, after a jury had entered a verdict that was reduced to judgment in the amount of $8,321,348 plus post-judgment interest at the rate of 7.5%, Courtney advised Billy Jo to sign an addendum that would strip her of the protection of payment of the Kusters' Judgment and force her into bankruptcy because of a lack of assets.

172. Courtney & Mills' acceptance of money in exchange for facilitating the agreement between Equity Insurance and Billy Jo was a fraudulent transfer for a multitude of reasons, including the following:

a. The transfer was made with actual intent to hinder, delay or defraud creditor(s) with full knowledge that a judgment in the millions of dollars would be entered in favor of the Kusters against Billy Jo, thereby making Billy Jo a debtor to the Kusters in violation of A.C.A. § 4-59-201 et seq;

b. Courtney & Mills took $166,666.67 knowing it would be subject to subsequent claims in bankruptcy court but also that it was a portion of an amount that was far less than the fair value of Billy Jo's claim against Equity Insurance;

c. The transfer of the $166,666.67, in conjunction with the transfer of Billy Jo's claims against Equity Insurance constituted insolvency for Billy Jo as it reduced her assets of value to nothing;

d. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy her creditor(s) claims including the judgment the Kusters were likely to receive against her;

e. For purposes of this transfer, Courtney & Mills was an insider in that it was a fiduciary of Billy Jo and had an attorney-client relationship with her at the time of the transfer;

f. The transfer of $166,666.67 in conjunction with the transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

g. The agreement that was the basis of the transfer of $166,666.67 to Courtney & Mills was drafted to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing;

h. The transfer of $166,666.67 to Courtney & Mills was done after suit was filed against Billy Jo, and for which a trial and verdict for millions of dollars was a high likelihood;

i. The transfer of $166,666.67 to Courtney & Mills was under the auspices that it was part of a bona fide instrument for such transfer; and

j. In all other ways learned through discovery.

173. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance and the agreement which gave Courtney & Mills $166,666.67.

174. That transfer was committed through actual fraud and is subject to avoidance through A.C.A. § 4-59-204.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of $166,666.67 to Courtney & Mills was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## COUNT XVII
## FRAUDULENT TRANSFER UNDER A.C.A. § 4-59-204 AGAINST COURTNEY & MILLS CONSTRUCTIVE FRAUD

COMES NOW, plaintiff Stanley Bond as Chapter 7 Trustee of the Estate of Billy Jo Lander, by and through counsel, and for Count XVII of this Complaint states and alleges as follows:

175. Plaintiff realleges and restates all preceding paragraphs of this Complaint and incorporates each one fully and completely herein by reference.

176. In 2021, Courtney of Courtney & Mills induced Billy Jo to hire them and told her he wanted to represent her in a claim against Equity Insurance for its improper conduct.

177. Courtney and Ann Mills then traveled to Berryville, Arkansas and met with Billy Jo at her home.

178. During the meeting, Courtney and Ann Mills induced Billy Jo to sign a contract with their firm, Courtney & Mills, LLC, to represent her for her claims against Equity Insurance.

179. At the time of the meeting, Courtney knew that the Kusters had a pending lawsuit against Billy Jo and because of Equity Insurance's actions, Billy Jo was exposed to an excess judgment.

180. Courtney also knew that the Kusters' claims against Billy Jo would likely result in a jury verdict totaling millions of dollars.

181. Courtney then encouraged Billy Jo to sign an agreement that Equity Insurance would pay Billy Jo $500,000.

182. Courtney & Mills then took a one-third fee on the amount Equity Insurance paid to Billy Jo and advised Billy Jo to attempt to hide her proceeds in accounts with other individuals' names on them.

183. In June 2024, after a jury had entered a verdict that was reduced to judgment in the amount of $8,321,348 plus post-judgment interest at the rate of 7.5%, Courtney advised Billy Jo to sign an addendum that would strip her of the protection of payment of the Kusters' Judgment and force her into bankruptcy because of a lack of assets.

184. Courtney & Mills' acceptance of money in exchange for facilitating the agreement between Equity Insurance and Billy Jo was a fraudulent transfer for a multitude of reasons, including the following:

a. Courtney & Mills took $166,666.67 knowing it would be subject to subsequent claims in bankruptcy court but also that it was a portion of an amount that was far less than the fair value of Billy Jo's claim against Equity Insurance;

b. The transfer of the $166,666.67, in conjunction with the transfer of Billy Jo's claims against Equity Insurance constituted insolvency for Billy Jo as it reduced her assets of value to nothing;

c. This transfer was committed with full knowledge that Billy Jo would be left without any assets to satisfy her creditor(s) claims including the judgment the Kusters were likely to receive against her;

d. For purposes of this transfer, Courtney & Mills was an insider in that it was a fiduciary of Billy Jo and had an attorney-client relationship with her at the time of the transfer;

e. The transfer of $166,666.67 in conjunction with the transfer of Billy Jo's bad faith claim to Equity Insurance was tantamount to transfer of "all" of Billy Jo's property, and was certainly a transfer of all of Billy Jo's property of value;

f. The agreement that was the basis of the transfer of $166,666.67 to Courtney & Mills was drafted to be absolutely secret, to the point that Billy Jo was instructed not to disclose the agreement in her bankruptcy filing;

g. The transfer of $166,666.67 to Courtney & Mills was done after suit was filed against Billy Jo, and for which a trial and verdict for millions of dollars was a high likelihood;

h. The transfer of $166,666.67 to Courtney & Mills was under the auspices that it was part of a bona fide instrument for such transfer; and

i. In all other ways learned through discovery.

185. As a direct and proximate result of the conduct outlined above, a fraudulent transfer was initiated through the agreement that purported to transfer Billy Jo's claims against Equity Insurance and the agreement which gave Courtney & Mills $166,666.67.

186. That transfer was committed through constructive fraud and is subject to avoidance through A.C.A. § 4-59-204.

WHEREFORE, plaintiff seeks an order from this Court that the transfer of $166,666.67 to Courtney & Mills was a fraudulent transfer that must be avoided under applicable law, and for such further relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all of the issues raised hereinabove.

**STRONG LAW, P.C.**

Steve Garner – AR Bar #2012295
Jacob Lewis – AR Bar #2023109
Hammons Tower
901 E. St. Louis Street, Suite 1800
Springfield, MO 65806
Phone: 417-887-4300
Fax: 417-887-4385
sgarner@stronglaw.com
jlewis@stronglaw.com

**QUATTLEBAUM, GROOMS & TULL PLLC**

Vincent O. Chadick
___________________________
Vincent O. Chadick – AR Bar #94075
4100 Corporate Center Drive, Suite 310
Springdale, Arkansas 72762
Phone: 479-444-5200
Fax: 479-444-6647
vchadick@qgtlaw.com

***Attorneys for Plaintiff***